UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

ZUFFA, LLC,

    Plaintiff,

v.

STEPHAN U. SHIN and
KPSS VENTURES, LLC,
*d/b/a The Relocation Room*,

    Defendants.

Civil Action No. TDC-19-2768

## MEMORANDUM OPINION

Plaintiff Zuffa, LLC ("Zuffa") filed this suit against Defendants Stephan U. Shin and KPSS Ventures, LLC d/b/a The Relocation Room ("KPSS") for claims under the Communications Act of 1934, 47 U.S.C. § 605 (2018), and the Cable and Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553, as well as a claim for copyright infringement, 17 U.S.C. §§ 501, 504 (2018). Pending before the Court is Zuffa's Motion for Default Judgment, which is fully briefed. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For the reasons set forth below, Zuffa's Motion will be GRANTED.

## BACKGROUND

Zuffa does business as the Ultimate Fighting Championship ("UFC") and owns the rights to all television broadcasts of UFC matches via closed circuit television and encrypted satellite signal. Zuffa owned the rights, including the copyright, to the entire UFC broadcast of fights scheduled for May 12, 2018 ("the Broadcast"). Zuffa entered into licensing agreements with

businesses throughout Maryland to receive the Broadcast and display it to patrons, with a flat fee of $788 for businesses with a capacity of 1-50 persons and with a highest rate of $3,938 for establishments with a capacity of 451-500 persons. The Broadcast was then transmitted by encrypted broadcast signal, closed circuit television, encrypted satellite signal, or broadband internet.

KPSS operates an establishment known as the Relocation Room located in Gaithersburg, Maryland. Zuffa alleges that Shin "is the officer, director shareholder and/or principal" of the Relocation Room, Compl. ¶ 8, ECF No. 1, has supervisory control over its activities, and receives a financial benefit from the Relocation Room. The Relocation Room did not purchase a license from Zuffa to show the Broadcast to patrons. However, in advance of the Broadcast, the Relocation Room advertised on Facebook that it would be hosting a viewing of the Broadcast.

On May 12, 2018 at approximately 10:00 p.m., a private investigator paid a $15 fee to enter the Relocation Room and saw the Broadcast playing on televisions inside. The investigator estimated that the Relocation Room had a capacity of 1-50 customers. Although the investigator did not count the number of patrons watching the Broadcast, the investigator recorded a video of the Relocation Room at the time, which appears to show fewer than 10 people watching the Broadcast. Zuffa further alleges that Shin "charged" the $15 cover fee "for each patron entering" the Relocation Room on the night of the Broadcast. Compl. ¶ 17.

On September 20, 2019, Zuffa filed a Complaint against KPSS and Shin alleging violations of § 605 and § 553 and a claim of copyright infringement. Defendants were properly served on October 28, 2019 but failed to file a responsive pleading or otherwise defend by the applicable deadline. On December 12, 2019, Zuffa filed for a Clerk's Entry of Default, which was entered on June 30, 2020.

2

## DISCUSSION

On October 6, 2020, Zuffa filed a Motion for Default Judgment, seeking $20,000 in damages for a violation of § 605 and $10,000 in damages for copyright infringement. To date, Defendants have not filed a response to the entry of default or Zuffa's Motion for Default Judgment.

### I. Legal Standard

"When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). After a default has been entered by the clerk, the court may, upon the plaintiff's application and notice to the defaulting party, enter a default judgment. Fed R. Civ. P. 55(b)(2). A defendant's default does not, however, automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982) ("[T]rial judges are vested with discretion which must be liberally exercised, in entering [default] judgments and in providing relief therefrom."); *Dow v. Jones*, 232 F. Supp. 2d 491, 494 (D. Md. 2002). The United States Court of Appeals for the Fourth Circuit has a "strong policy that cases be decided on their merits," *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), but default judgment may be appropriate "when the adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005); *see H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970) ("[T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.").

In reviewing a Motion for Default Judgment, the court accepts as true the well-pleaded factual allegations in the complaint relating to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001). However, it remains for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. *Id*; *see also* 10A C. Wright & A. Miller, Fed. Prac. & Proc. Civ. § 2688.1 (4th ed. 2016) ("Liability is not deemed established simply because of the default . . . [T]he court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If liability is established, the court must then determine the appropriate amount of damages. *See Ryan*, 253 F.3d at 780-81. As to damages, the court cannot accept as true the factual allegations of the plaintiff, but must instead make an independent determination. *See Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983); *Lawbaugh*, 359 F. Supp. 2d at 422. To do so, the court may conduct an evidentiary hearing, *see* Fed. R. Civ. P. 55(b)(2), or may dispense with a hearing if there is an adequate evidentiary basis in the record from which to calculate an award. *See Pope v. United States*, 323 U.S. 1, 12 (1944) ("It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly.").

## II.    Liability

### A.    Sections 605 and 553

47 U.S.C. § 605 and 47 U.S.C. § 553 address "different modalities of so-called 'cable theft.'" *J&J Sports Prods., Inc. v. MayrealII, LLC*, 849 F. Supp. 2d 586, 588 (D. Md. 2012). Section 605(a) prohibits the unauthorized interception or receipt of certain "radio" communications, 47 U.S.C. § 605(a), and has been interpreted to include the unauthorized

4

interception of "digital satellite television transmissions." *MayrealII*, 849 F. Supp. 2d at 588 n.3. Section 553(a) prohibits the unauthorized interception or receipt of certain cable communication. 47 U.S.C. § 553(a). Thus, § 605(a) likely would apply if the Restoration Room intercepted the Broadcast and showed it over satellite television, while § 553(a) likely would apply if the Restoration Room used cable television. Zuffa has not alleged which form of telecommunication the Restoration Room used, but it asserts that both statutes apply to the Restoration Room's conduct regardless of the precise means of transmission. It is not clear, however, whether the statutes overlap sufficiently for both to apply regardless of whether the Restoration Room used satellite television or cable television. *See, e.g., United States v. Norris*, 88 F.3d 462, 468-69 (7th Cir. 1996) (rejecting the argument that "all conduct governed by § 553 also falls within the ambit of § 605"); *Int'l Cablevision, Inc. v. Sykes*, 75 F.3d 123, 133 (2d Cir. 1996) (noting that although the provisions overlap in some ways, there is not a "complete overlap between the coverage of § 605 and 553"). Nevertheless, the Court need not precisely define the relationship between § 605 and § 553 to resolve this case. Because, as a general principle, "courts can and should preclude double recovery," *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 333 (1980), and because as discussed below, the damages to which Zuffa is entitled based on the facts alleged in the Complaint would be the same under either statute, it is not necessary to determine exactly which statute was violated. Instead, it is sufficient to conclude that Zuffa's allegation that the Restoration Room intercepted and showed the Broadcast without Zuffa's authorization establishes that the Restoration Room violated either § 605 or § 553, or both. *See J & J Sports Production, Inc. v. Rumors Inc.*, No. CCB-14-2046, 2014 WL 6675646, at *2 (D. Md. Nov. 21, 2014) (noting that although J & J did not specify how the program was unlawfully intercepted, that omission was

"not fatal" because the factual allegations established a violation of either § 553 or § 605). The Court finds KPSS liable under these provisions.

In its Complaint and the Motion, Zuffa asserts that Shin is jointly and severally liable for these violations. To state a § 605 or § 533 claim against an individual defendant, a plaintiff must show that the individual had (1) "the right and ability to supervise" the violations; and (2) a "direct financial interest in the misconduct." *MayrealII*, 849 F. Supp 2d. at 589 (quoting *J & J Sports Prods., Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469, 473 (E.D.N.Y. 2009)). Here, Zuffa has alleged that Shin is the "officer, director shareholder and/or principal" of The Relocation Room, that he has "supervisory capacity over the activities" at the Restoration Room, and that he "received a financial benefit" from its activities. Compl. ¶¶ 8-10. The Court therefore finds liability as to Shin as well.

### B.    Copyright Infringement

To establish copyright infringement, a plaintiff must prove (1) ownership of a valid copyright; and (2) copying of "constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Svc. Co.*, Inc., 499 U.S. 340, 361 (1991). "[T]he Copyright Act does not require that the infringer know that he is infringing or that his conduct amount to a willful violation of the copyright owner's rights," but "it nonetheless requires conduct by a person who causes in some meaningful way an infringement." *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004).

Zuffa has met the first element because it had a valid copyright for the Broadcast, as demonstrated by its certificates of registration. *See* 17 U.S.C. § 410(c) ("In any judicial proceedings the certificate of registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright[.]"). Zuffa has

6

also met the second element because it has provided an affidavit stating that the Relocation Room screened the Broadcast—effectively copying and reproducing the copyrighted material—as well as a video that corroborates this statement. The Court finds liability for copyright infringement.

## III. Damages

### A. Sections 605 and 553

#### 1. Statutory Damages

Under § 605(e), "the party aggrieved may recover an award of statutory damages for each violation of [§ 605] involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). In determining a just amount of statutory damages, courts may calculate either the approximate amount of profits that the defendant received from the unauthorized broadcast or the amount of the plaintiffs lost earnings, as measured by the unpaid license fee, or may award a flat sum per violation. *See J & J Sports Prods., Inc. v. Waters*, No. FDW-12-779, 2013 WL 2948318, at *4 (W.D.N.C. June 14, 2014); *J & J Sports Prods., Inc. v. Quattroche*, No. WMN-09-3420, 2010 WL 2302353, at *2 (D. Md. June 7, 2010) ("*Quattroche*").

Here, Zuffa has not provided any information regarding the Relocation Room's profits from showing the Broadcast. Zuffa has established the amount of the unpaid license fee. According to Zuffa's rate table, an establishment that can accommodate no more than 50 people would have to pay a license fee of $788. According to Zuffa's investigator, the Restoration Room had a capacity of 1-50 people, and Zuffa provided a video taken at the Relocation Room, which shows approximately seven people viewing the Broadcast that night. The Court finds this evidence sufficient to show that the license fee would have been $788. Where § 605 requires statutory

7

damages be "not less than $1,000," 47 U.S.C. § 605(e)(3)(C)(i), the Court awards statutory damages in the amount of $1,000.

### 2. Enhanced Damages

Under § 605 and 47 U.S.C. § 553, Zuffa also seeks enhanced damages in the amount of $10,000. Under § 605(e), if "the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages . . . by an amount of not more than $100,000." 47 U.S.C. § 605(e)(3)(C)(ii). "In determining whether enhanced damages are warranted, courts consider several factors: (1) evidence of willfulness; (2) repeated violations over an extended period of time; (3) substantial unlawful monetary gains; (4) advertising the broadcast; and (5) charging an admission fee or charging premiums for food and drinks." *Quattrocche*, 2010 WL 2302353, at *2; *J & J Sports Productions, Inc. v. El Rodeo Restaurant, LLC*, No. 15-0172-PJM, 2015 WL 3441995, at *3 (D. Md. May 26, 2015).

Here, the Restoration Room clearly acted for commercial advantage, and there is evidence of willfulness in that the Restoration Room exhibited the broadcast, which required that it affirmatively take steps to descramble Zuffa's encrypted signal. *See J&J Sports Prods., Inc. v. Castro Corp.*, No. 11-CV-00188-AW, 2011 WL 5244440, at *4 (D. Md. Nov. 1, 2011) ("[S]ignals do not descramble spontaneously, nor do television sets connect themselves to cable distribution systems.") (quoting *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999)). Zuffa also has shown that the Restoration Room advertised the Broadcast on social media before the event and charged a $15 fee to enter that night. Zuffa has not, however, presented evidence of repeated violations or substantial monetary gains.

A willful violation for commercial gain warrants enhanced damages to deter the Restoration Room and other commercial entities from future violations, but there is no basis to support Zuffa's request for $10,000. Where Zuffa has not presented evidence of repeated violations, significant monetary gain, or egregious willfulness, the amount is necessarily limited. *See Castro Corp.*, 2011 WL 5244440, at *5 (referencing awards ranging from two to six times the statutory damages in the absence of repeat behavior or egregious willfulness). Although Zuffa's own video appears to show fewer than 10 attendees watching the Broadcast, judges in this district have applied a five-fold enhancement for the use of an admission fee or advertising, and have applied a similar enhancement even where there was no admission fee and low attendance. *See, e.g., J & J Sports Prods., Inc. v. KD Retail, Inc.*, No. PX-16-2380, 2017 WL 1450218, at *2 (D. Md. Apr. 20, 2017) ("Defendants however, did charge[] an admission fee, and this aggravator alone can support enhanced damages as five-fold the statutory damages."); *Zuffa, LLC v. Ferrell*, No. 8:20-CV-0273-PX, 2021 WL 2315458, at *5 (D. Md. June 7, 2021) (awarding a five-fold enhancement of statutory damages where the defendant imposed no cover charge and had low capacity but did advertise on Facebook). The Court therefore awards a five-fold enhancement of $5,000. When this figure is combined with the $1,000 award of statutory damages, the total damages award under § 605 and 47 U.S.C. § 553 is $6,000.

## B. Copyright Damages

Zuffa also seeks statutory damages of $5,000 for its copyright claim under 17 U.S.C. §§ 501, 504. An award of damages under the Communications Act does not preclude recovery under the Copyright Act, because the two "vindicate[] separate rights," but the Court has "broad discretion in setting the amount of statutory damages under the Copyright Act." *Joe Hand Promotions, Inc. v. Levin*, No. JPO-18-9389, 2019 WL 3050852, at *5 (S.D.N.Y. July 12, 2019).

In exercising this discretion, the Court notes that it "would be duplicative and excessive to award Plaintiff damages under § 504 in addition to statutory and enhanced statutory damages under § 605 for the same underlying conduct." *Joe Hand Promotions, Inc. v. Garcia-Nunez*, No. MC-18-1452, 2019 WL 2437456, at * 3 (D. Or. June 11, 2019).  As in *Levin*, here, the Court has already awarded Zuffa "a substantial sum" under § 605 and "has thereby vindicated the aims of the Copyright Act to the extent that the two statutes' purposes overlap." *Levin*, 2019 WL 3050852, at *5.  For this reason, the Court will award Zuffa $750 in statutory damages for the copyright violation, the minimum required under 17 U.S.C. § 504(c)(1).  The Court declines to award any additional damages pursuant to 17 U.S.C. § 504.

## CONCLUSION

For the foregoing reasons, the Court will grant the Motion and award total damages of $6,750 against KPSS and Shin, jointly and severally.  A separate Order shall issue.

Date: August 10, 2021

THEODORE D. CHUANG
United States District Judge

10